# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD W. KUYKENDALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-1146-F |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Donald Kuykendall brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephan P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 12, hereinafter "R.__"). The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on December 15, 2009. R. 173-76, 193-96, 197-209. Plaintiff alleged a disability onset date of June 19, 2008, and sought benefits on the basis of a depression, anxiety, post-traumatic stress disorder, night terrors, and chronic obstructive pulmonary disease ("COPD"). R. 173, 193, 198. Following denial of his applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 5, 2012. R. 39-66, 74-78, 79-82, 91-93, 94-96. The ALJ issued an unfavorable decision on June 21, 2012. R. 16-32. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner had prescribed a five-step sequential evaluation process to determine whether a claimant, like Plaintiff, is disabled and therefore entitled to DIB and SSI. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further, when an ALJ finds that a claimant is disabled, but there is medical evidence of drug addiction and alcoholism ("DAA") in the record, the ALJ must determine whether the DAA is a material contributing factor to the claimant's disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In making this determination, the "key factor . . . is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1),

416.935(b)(1). The ALJ must evaluate which of the claimant's physical and/or mental limitations, upon which the threshold disability determination was based, would remain if the claimant stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ finds that a claimant's remaining limitations would not be disabling, then the DAA is a material contributing factor to the claimant's disability and the ALJ must determine the claimant is not disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). If the ALJ finds that the remaining limitations would in and of themselves be disabling, then the ALJ must determine that the claimant is disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2008, the alleged onset date. R. 19; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of status/post inguinal surgical repair of a hernia; degenerative disc disease of the lumbar spine; major depressive disorder, recurrent and unspecified; anxiety; post-traumatic stress disorder; and substance abuse disorder. R. 19; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's impairments met sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 19; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). The ALJ next found that, if Plaintiff "stopped the substance use," he "would continue to have a severe impairment or combination of impairments" but this impairment or combination of impairments

would not meet or medically exceed any of the Listings. R. 20-21; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") as it would exist if Plaintiff "stopped the substance use." R. 24-30; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). The ALJ found that Plaintiff had the RFC to perform "light work," subject to many exertional and nonexertional limitations, including that Plaintiff "due to a pulmonary condition . . . would require reasonably clean air conditions, with no fumes, odors, gasses, or noxious substances and no extremes of temperatures, particularly heat." R. 24; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same).

At step four, the ALJ found that if Plaintiff "stopped the substance use," he would be unable to perform his past relevant work. R. 30; *see* 20 C.F.R. §§ 404.1520(f), 404.1560(b), 416.920(f), 416.960(b). At step five, the ALJ used the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix 2 as a "framework" to find that Plaintiff was not disabled. R. 30. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff—considering his age, education, work experience, and RFC as it would exist if Plaintiff "stopped the substance use"—would be able to perform the requirements of representative occupations such as housekeeper, fruit cutter, and small product assembler I. R. 30-31. On the basis of those occupations, the ALJ found that if Plaintiff "stopped substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." R. 31.

The ALJ then concluded that "[t]he substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use." R. 32; *see* 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). Accordingly, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. R. 32; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff alleges that the ALJ ignored evidence of Plaintiff's breathing problems in analyzing whether Plaintiff met or equaled a listed impairment. Pl.'s Br., Doc. No. 15, at 2. Relatedly, Plaintiff also alleges that the ALJ failed to fully develop the record with respect to Plaintiff's claims of COPD, failed to assess the severity of Plaintiff's COPD (among other claimed impairments), and failed to consider Plaintiff's breathing limitations when evaluating whether Plaintiff's DAA was a material contributing factor to his disability. Pl.'s Br. at 2, 4, 5, 12.

## ANALYSIS

Relative to each of Plaintiff's claims of error, the undersigned first examines the evidence of COPD in the record as well as the evidence considered by the ALJ as reflected in his decision. With respect to the nonmedical evidence, Plaintiff expressly alleged disability on the basis of COPD, among other impairments. *See* R. 198. Plaintiff also provided the ALJ with a pre-hearing memorandum detailing his claim that he met Listing 3.02A due to his COPD. R. 241-43; *see also* R. 40 (ALJ confirming at hearing that he received the pre-hearing memorandum). In his decision, the ALJ noted the allegation of COPD, recited Plaintiff's testimony of limitations caused by COPD, and assigned certain environmental limitations in the RFC as a result of Plaintiff's "pulmonary condition." R. 24; R. 25 ("[Plaintiff's] testimony is [that] he cannot work on a full time basis because he has COPD."). The ALJ did not, however, list COPD as a

severe impairment or discuss a finding that it was not a severe impairment. Nor did the ALJ discuss Plaintiff's assertion that he met Listing 3.02A.

With respect to the medical evidence, Plaintiff was treated by Thomas C. Klein, MD, and Tracy R. Klein, MD, for respiratory problems in 2007. The ALJ properly describes this treatment. *See* R. 25-26.

In April and May of 2008, immediately prior to the alleged onset date, Plaintiff was treated by Dr. Tracy Klein for further respiratory problems. On April 23, 2008, Plaintiff was seen by Dr. Klein on complaints of upper respiratory infection and COPD "on [and] off for last week or so [with] congestion in lungs and problems breathing." R. 262. On May 7, 2008, Dr. Klein diagnosed Plaintiff with COPD and sent a medical leave form to Plaintiff's employer. R. 261. On May 19, 2008, Plaintiff was seen again by Dr. Klein, who noted that Plaintiff reported being "given meds for [COPD] month ago" and "is better but still having problems." R. 259-60. Plaintiff further stated that he had not worked a full day for more than six weeks as a result of breathing problems that he believed were caused by exposure to composites at work and wanted to be off work to "limit exposure" for an additional two weeks. *Id.* On May 21, 2008, Dr. Klein diagnosed Plaintiff with chronic airway obstruction NEC and sent a medical leave form to Plaintiff's employer. R. 258. Dr. Klein agreed that Plaintiff "may avoid environment for two weeks to allow healing." R. 260. Plaintiff was subsequently treated by Dr. Klein for other conditions, with little or no focus on COPD. *See* R. 256-57 (July 15, 2008 examination notes), 254-55 (October 14, 2008 examination notes), 252-53 (November 4, 2008 examination notes). The ALJ broadly discusses the treatment of Plaintiff by Dr.

7

Klein during this time period but omits the diagnosis of chronic airway obstruction NEC. R. 26. The ALJ also references a medical leave note but states that it was sent "[f]or reasons that are not entirely clear." R. 26 (citing May 19, 2008 note), *see* R. 673.

On March 22, 2010, Consultative Examiner Adel Malati, MD, conducted a comprehensive internal medicine examination of Plaintiff. R. 620-38. Dr. Malati opined, as his primary clinical impression, that Plaintiff had a "history of chronic obstructive pulmonary disease." R. 623.[1] As part of the exam, Plaintiff underwent a pulmonary function study, which showed forced expiratory volume, or "$FEV_1$," levels both before and after application of a bronchodilator medication. R. 628, 630-35. The pulmonary study showed pre-medication $FEV_1$ results of 2.39, 1.76, and 1.54, and post-medication $FEV_1$ results of 1.20, 1.30, and 1.28. R. 628, 630-35; *see* 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02(A) (requiring $FEV_1$ result equal to or less than 1.65 for person of Plaintiff's height to meet Listing 3.02A). The clinical interpretation of the study was that the pre-medication "[t]esting indicates moderate obstruction as well as low vital capacity, possibly from a concomitant restrictive defect," and that the post-medication "[t]esting indicates severe obstruction." R. 636. The ALJ notes Dr. Malati's examination and the pulmonary function study, stating that it "revealed moderate obstruction as well as low vital capacity." R. 27. The ALJ did not discuss the $FEV_1$ results or the finding of a severe obstruction during post-medication testing.

---

[1] Dr. Malati also recorded clinical impressions of hypertension and depression. R. 623.

8

Plaintiff's medical records were reviewed by SSA medical consultants Luther Woodcock, MD, and James Metcalf, MD. R. 639-46 (Physical Residual Functional Capacity Assessment by Dr. Woodcock, dated June 15, 2010), 648 (Case Analysis by Dr. Metcalf, dated Feb. 17, 2011). Dr. Woodcock reported Plaintiff's primary diagnosis as COPD and opined that Plaintiff is limited to sedentary level exertion with, among other things, the additional, nonexertional limitation that he avoid even moderate exposure to fumes, odors, dusts, gasses, and poor ventilation. *See* R. 639-46. Dr. Metcalf confirmed that opinion. R. 648. As discussed, the ALJ found that Plaintiff could perform light work subject to various additional limitations, including the restriction on environmental exposure stated by Dr. Woodcock. R. 24. Regarding the difference between sedentary and light work, the ALJ only states that "the opinion of the [SSA] medical consultants that limit [Plaintiff] to sedentary work presents an opinion that is more limited than the exertion level of [Plaintiff's] current work." R. 30.

A. *Whether the ALJ Erred at Step Two in Failing to Find that COPD Was a Severe Impairment*

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). The showing required to meet this threshold has been described by the Tenth Circuit as "de minimis." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997). In an oft-cited concurring opinion, Justice O'Connor explained the purpose of a low threshold at this early point of the sequential evaluation: "[S]tep two may not be used to disqualify those who meet the statutory definition of

9

disability. . . . Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking [subsequent analytical steps in the sequential evaluation process]." *See Bowen v. Yuckert*, 482 U.S. 137, 157 (1987) (O'Connor, J., concurring). The Commissioner's interpretation of SSA regulations reflects the same point:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

SSR 85-28, 1985 WL 56856, at *4.

The ALJ erred at step two by failing to include Plaintiff's COPD or some encompassing condition as a severe impairment. That error, however, was harmless because the ALJ found that other severe impairments existed and on that basis proceeded to the next step of the sequential evaluation process. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); 42 U.S.C. § 423(d)(2)(B) (requiring ALJ to consider both severe and nonsevere impairments in determining disability).

B. *Whether the ALJ Erred at Step Three in Failing to Consider If Plaintiff Met Listing 3.02A Due to His COPD*

Despite Plaintiff's direct contention that he met Listing 3.02A, the ALJ did not discuss that Listing. R. 21-24; *see* R. 241-43 (prehearing brief by Plaintiff arguing for application of Listing 3.02A). For Plaintiff to meet or equal Listing 3.02A, he must show, in relevant part:

> Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ [forced expiratory volume] equal to or less than the values specified in table I corresponding to the person's height without shoes.

20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02(A). Forced expiratory volume, or "$FEV_1$," is measured both before and after the patient inhales a bronchodilator medication. *See id.* § 3.00(E).

The record indicates that Plaintiff is six feet tall, meaning that to meet Listing 3.02A he must have an $FEV_1$ result equal to or less than 1.65. R. 628, 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.02(A). As discussed, the March 2010 pulmonary study for Plaintiff showed pre-bronchodilator $FEV_1$ results of 2.39, 1.76, and 1.54, and post-bronchodilator $FEV_1$ results of 1.20, 1.30, and 1.28. R. 628, 630-35. Thus, on their face, one of the pre-medication results and two of the post-medication results were within the qualifying range for the Listing.

Defendant argues that Plaintiff did not meet Listing 3.02A because the results of the March 2010 pulmonary function study were not acceptable under the directions of the Listing. *See* Def.'s Br., Doc. No. 16, at 7-8; 20 C.F.R. pt. 404, subpt. P, App. 1, § 3.00(E) (requiring $FEV_1$ results to be "reproducible" as shown by specific criteria). Plaintiff acknowledges that two of his pulmonary function tests were not reproducible but argues that if the ALJ determined that he did not meet Listing 3.02A, then, in light of the results of the tests administered by state medical consultant Dr. Malati, the ALJ should have ordered additional pulmonary function due to "inconclusive evidence." Pl.'s Br. at 4-5 (citing *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)).

Because the ALJ did not discuss Listing 3.02A or Plaintiff's breathing problems at step three, the undersigned cannot—and will not—speculate on the ALJ's reasoning for his decision.

> In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Therefore, the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citations omitted). This matter should be remanded for consideration of whether Plaintiff meets or equals Listing 3.02A.

> C. *Whether the ALJ Erred in Assessing Plaintiff's RFC Because He Did Not Consider All of the Evidence of Plaintiff's COPD*

An ALJ's decision must be based on substantial evidence in the record as a whole. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In making his decision, an ALJ may not pick and choose among uncontroverted medical evidence, taking only those parts that are favorable to his position while ignoring other evidence. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). As detailed above, the ALJ's decision reflects that he considered some of the evidence of Plaintiff's COPD. However, the ALJ omitted from discussion several important medical

findings related to that condition, including Dr. Tracy Klein's diagnosis of chronic airway obstruction, the specific results of Dr. Malati's $FEV_1$ tests, and Dr. Malati's associated finding of a severe obstruction post-medication.

As stated above, although "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10; *see also* 20 C.F.R. §§ 404.1520(a)(3) ("We will consider all evidence in your case record . . . ."), 416.920(a)(3) (same). The ALJ's failure to address the $FEV_1$ results and other significantly probative evidence of Plaintiff's COPD leaves this Court unable to ascertain whether the ALJ properly considered that condition in assessing Plaintiff's RFC. *See Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (stating that decision must be remanded when ALJ does not explain his findings with enough specificity to make judicial review possible).

D. *Whether the ALJ Erred in His DAA Determination Because He Did Not Consider Plaintiff's COPD*

As noted above, an individual cannot be considered to be disabled if drug abuse or alcoholism is "material" to that consideration. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(a), 416.935(a). The SSA has published policy interpretation rulings, the latest version of which is SSR 13-2p, 78 Fed. Reg. 11939 (Feb. 20, 2013), setting forth the process to be followed in conducting a DAA materiality inquiry.[2] In determining

---

[2] Social Security Ruling 13-2p was published on February 20, 2013, and, thus, came into effect after the ALJ's decision in this case was issued but before the Appeals Council denied review. Prior to the publication of SSR 13-2p, the principles discussed herein

whether DAA is a material contributing factor to a claimant's disability, the ALJ must first decide if the claimant has DAA. SSR 13-2p, 78 Fed. Reg. at 11941. Second, the ALJ must determine if the claimant is disabled, following the general disability case development and evaluation procedures and considering the effects of DAA. *Id.* at 11941-42. Finally, if there is DAA, the ALJ must re-evaluate the claimant as if he had stopped using drugs and alcohol, and on that basis decide whether the DAA is a contributing factor material to the disability. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); SSR 13-2p, 78 Fed. Reg. at 11941-42.

Here, the flaws in the ALJ's consideration of Plaintiff's COPD as addressed above also tainted the DAA evaluation. The ALJ's evaluation of whether Plaintiff would be able to perform work if he "stopped the substance use" failed to adequately consider, or explain the consideration of, Plaintiff's breathing problems and whether they were caused or affected by Plaintiff's DAA. *See* R. 30-31; SSR 13-2p, 78 Fed. Reg. at 11941-42. Accordingly, on remand, the ALJ's DAA evaluation must address all of Plaintiff's impairments and whether Plaintiff's DAA caused or affected such impairments. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); SSR 13-2p, 78 Fed. Reg. at 11941-42.

*E. Whether the Remaining Claims of Error Warrant Remand*

Plaintiff additionally claims that (1) the ALJ's determinations at steps 2 through 5 are faulty because he did not adequately account for all of Plaintiff's impairments and

---

were substantially set forth in a prior policy interpretation ruling, SSR 82-60, as well as a "teletype" issued by the Commissioner, Emergency Message EM-96200. *See Salazar v. Barnhart*, 468 F.3d 615, 622-23 (10th Cir. 2006). SSR 13-2p superseded both SSR 82-60 and EM 96-200. For clarity, the undersigned has referred to SSR 13-2p in this Report and Recommendation.

limitations; and (2) the ALJ's credibility determination is faulty. Pl.'s Br. at 2. Because the above issues warrant remand, however, the undersigned need not address the other claim of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion. The undersigned expresses no opinion on whether, upon remand, the ALJ should find that Plaintiff's COPD is a severe impairment, whether Plaintiff's COPD meets a Listing, or whether additional pulmonary testing is required. Rather, on remand, the ALJ must consider all of the relevant evidence and make specific findings regarding whether Plaintiff met Listing 3.02A and, if not, whether Plaintiff's COPD caused any functional limitation that should be reflected in the RFC. Likewise, on remand, the ALJ's DAA evaluation must include all impairments, including Plaintiff's breathing problems. *See* SSR 13-2p, 78 Fed. Reg. 11939 (Feb. 20, 2013).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 26, 2015. The parties are

further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 12th day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE